DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| JACK SOTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2014-0024 |
| | ) | |
| F&M MAFCO, INC. & CHRISTIANSTED EQUIPMENT LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**Attorneys:**
**Eugenio S. Geigel, Esq.,**
**Wilfredo A. Geigel, Esq.,**
St. Croix, U.S.V.I.
   *For Plaintiff*

**Charles Edward Lockwood, Esq.,**
St. Croix, U.S.V.I.
   *For Defendants*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion to Dismiss or in the Alternative to Stay Pending Arbitration" (Dkt. No. 9) filed by Defendants F&M Mafco, Inc. and Christiansted Equipment Ltd. (collectively "Defendants"). For the reasons discussed below, the Court will grant Defendants' Motion to enter a stay of the proceedings in this Court pending arbitration, and deny, without prejudice, Defendants' motion to dismiss Plaintiff's claims on the merits.

### I.   BACKGROUND

On or about January 9, 2007, Plaintiff applied for two positions with Christiansted Equipment, Ltd., ("the Company"), which operates a subdivision of F&M Mafco, Inc. (Dkt. No. 1 at ¶¶ 8). When Plaintiff applied for employment with Defendants, he completed an Application

for Employment (the "Application"). (Dkt. No. 9 at 14). The first page of the Application states that "Christiansted Equipment, Ltd., . . . is an equal opportunity employer and does not unlawfully discriminate in employment." (Dkt. No. 9-9 at 1). The Application also includes a four-page segment titled "DISPUTE RESOLUTION AGREEMENT" (the "DRA"). (*See id.* at 5-8). Section 1 of the DRA provides in relevant part that "all claims, controversies or disputes . . . arising out of or in any way relating to the Applicant's application for employment by the Company . . . shall be resolved solely and exclusively by arbitration as provided in this Agreement." (*Id.* at 5). In addition to this general agreement to arbitrate, Section 2 of the DRA contains the following provision: "The parties also agree to arbitrate the issue of arbitrability of any claim. The arbitrator shall decide all issues of arbitrability including, but not limited to, any defenses to arbitration based on waiver, delay, or like defense." (*Id.* at 6).

After Plaintiff submitted the Application, Defendants awarded both positions to Caucasian applicants. (Dkt. No. 1 at ¶¶ 7-9). Plaintiff subsequently filed a complaint with the American Arbitration Association (Case No. 32 160 00069 08) alleging, *inter alia*, that he was promised, and therefore entitled to, the positions for which he applied with Defendants. (Dkt. No. 12 at 3).[1] On June 18, 2008, the arbitrator denied all of Plaintiff's claims. (Dkt. No. 9-1 at 4-5).

Plaintiff—a non-Caucasian Puerto Rican—also filed complaints with the U.S. Virgin Islands Department of Labor ("DOL") and the U.S. Equal Employment Opportunity Commission ("EEOC"). (Dkt. No. 1 at ¶ 10). Plaintiff alleged that Defendants discriminated against him based on his race and national origin in violation of 24 V.I.C. § 452 and Section 703 of Title VII of the Civil Rights Act of 1964. (*See id.*; Dkt. No. 1-1; Dkt. No. 1-2). On April 2, 2009, the DOL issued

---

[1] Plaintiff also alleged that Christiansted Equipment Ltd. (one of the defendants) owed him compensation for services that he had previously performed. (Dkt. No. 12 at 3).

a Determination letter in which it made a finding of probable cause, concluding that there was "an indication of Discrimination based on Race, Color and National Origin." (Dkt. No. 1-1 at 2).

After the DOL issued its Determination letter, Plaintiff filed suit in this Court on November 30, 2009, seeking damages for alleged civil rights violations (Case No. 1:09-cv-00096) (the "Prior Proceeding"). (Dkt. No. 12 at 4). Specifically, Plaintiff alleged that the same Defendants in the instant matter (F&M Mafco, Inc. and Christiansted Equipment Ltd.) as well as a third defendant (Daniel McKenna) "discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* . . . [in that] Defendants denied him inside sales and management positions on the basis of his race." *Soto v. F & M MAFCO, Inc.*, 2010 WL 2384582, at *1 (D.V.I. June 8, 2010). The defendants in the Prior Proceeding moved to compel arbitration of Plaintiff's employment discrimination claims, and to stay the District Court proceedings. *Id.* In opposing the motion to compel arbitration, Plaintiff argued that there was no evidence that he "knowingly and intentionally agreed to the terms of the [DRA]" because he did not sign the DRA. *Id.* at *2 (quoting Plaintiff's opposition). Nonetheless, the Court found that the parties had "entered into a valid arbitration agreement" in which Plaintiff "agreed to arbitrate his employment discrimination claims." *Id.* at *4-5. Accordingly, the Court compelled arbitration and stayed the proceedings. *Id.*

In the resulting arbitration, the arbitrator dismissed Plaintiff's claims with prejudice on the grounds of res judicata. (Dkt. No. 9-2 at 11). Pursuant to the arbitrator's order, the defendants filed a motion to dismiss Plaintiff's claims in this Court. (Dkt. No. 9-3 at 1). Plaintiff did not respond to the motion to dismiss. (*Id.*). Noting that arbitration had been completed, the Court granted the defendants' motion and dismissed Plaintiff's claims with prejudice on March 14, 2012. (*Id.* at 2).

3

On December 19, 2013, the EEOC issued a Letter of Determination in which it concluded that there was "an indication of discrimination based on race, color and national origin." (Dkt. No. 1-2 at 1). Subsequently, on February 28, 2014, the EEOC issued a right-to-sue letter to Plaintiff. (Dkt. No. 1-3 at 1-2). On May 22, 2014, Plaintiff filed a "Complaint for Declaratory Judgment" in the instant matter in which he asks the Court to declare, *inter alia*, that the DRA containing the arbitration provisions is null and void and that Plaintiff may pursue an action for damages in a court of his choosing based on the DOL's and EEOC's findings of discrimination. (Dkt. No. 1 at ¶¶ 22, 28).[2] In lieu of an answer, Defendants submitted the instant Motion.

In this Motion, Defendants seek to dismiss Plaintiff's claims on the principles of res judicata or, in the alternative, to stay the current litigation until completion of arbitration. (Dkt. No. 9 at 1). In his Opposition, Plaintiff posits a number of reasons why his current claims are not barred by res judicata and argues that the Application's arbitration provisions are null and void because Defendants' discriminatory actions were illegal and contrary to representations Defendants made in the Application. (*See generally* Dkt. No. 12). Specifically, Plaintiff notes that "[t]he opening statement in the application for employment with [D]efendants [states:] *Christiansted Equipment, Ltd., (the Company) is an equal opportunity employer and does not unlawfully discriminate in employment*." (*Id.* at 13 (emphasis in original)). Plaintiff argues that by discriminating against him, Defendants violated this opening statement of the Application. (*Id.*). Plaintiff asserts that "Defendants, in acting contrary to law and their self-imposed ethical, non-discriminatory standard and initial disposition, voided their arbitration clause." (*Id.*). Plaintiff goes on to contend that by

---

[2] Plaintiff notes in his Complaint that the EEOC letter declares that "the evidence obtained does establish a violation under Title VII." (Dkt. No. 1 at ¶ 13). However, as discussed below the Court does not reach the merits of Plaintiff's allegations of discrimination or the effect of the EEOC's and DOL's findings.

4

claiming that the Company was an equal opportunity employer, the Application and DRA were based on a material, and possibly fraudulent, misrepresentation that "renders the '[D]ispute Resolution Agreement' clause void and null." (*Id.* at 13-14).

As discussed below, the Court finds that Plaintiff's claims are subject to arbitration pursuant to the terms of the DRA.

## II.   DISCUSSION

### A.   Applicable Legal Principles

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "A 'case of actual controversy' means one of a justiciable nature." *Wyatt V.I. Inc. v. Gov't of the Virgin Islands*, 385 F.3d 801, 805 (3d Cir. 2004) (citing *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 325 (1936)). One of the purposes of the Declaratory Judgment Act is to "clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990). However, the fact that an issue is raised in a motion for declaratory judgment does not permit a court to rule on an issue that the parties previously agreed to arbitrate. *See Dockser v. Schwartzberg*, 433 F.3d 421, 425-28 (4th Cir. 2006) (affirming the district court's dismissal of a declaratory judgment action when the underlying issue (the correct number of arbitrators to be used) was properly decided by arbitration); *Roman v. Chesapeake Appalachia, L.L.C.*, 2012 WL 2076846, at *4 (M.D. Pa. June 8, 2012) (compelling arbitration when underlying issue plaintiffs sought to determine with declaratory judgment (that oil and gas lease had expired) was properly decided by arbitration).

Arbitration is a "matter of contract" where "litigants may freely contract to refer their dispute to arbitration." *American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013). The Federal Arbitration Act ("FAA") provides that where a valid arbitration agreement exists, trial courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," provided that the court is "satisfied that the issue involved . . . is referable to arbitration" under the parties' agreement. 9 U.S.C. § 3; *see Ebner v. Fin. Architects, Inc.*, 763 F. Supp. 2d 697, 699-701 (D. Del. 2011). "[U]nder the FAA, parties are generally free to structure their arbitration agreements as they see fit." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 458, (2003) (Rehnquist, J., dissenting)) (omitting quotations and brackets). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)) (emphasis in original).

Questions of arbitrability, such as whether an arbitration agreement is valid or whether it covers a particular issue, "are presumed to be questions for judicial determination." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 228 (3d Cir. 2012). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). However, where there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability, courts are generally required to enforce such an agreement and refer the arbitrability dispute to arbitration. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

Where courts are required to resolve issues of arbitrability, courts analyze two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration

6

agreement? (2) Does the dispute between those parties fall with[in] the language of the arbitration agreement?" *CardioNet, Inc.*, 751 F.3d at 172 (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998)) (quotations omitted). If the court answers both of these questions in the affirmative, then the merits of the dispute are determined by arbitration and not the court. *See John Hancock Mut. Life Ins. Co.*, 151 F.3d at 140.

Where a party challenges the validity of an arbitration agreement, determining whether such a challenge is subject to arbitration hinges on the precise scope of the party's challenge. This is so because "an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Thus, when a party "challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid," a court must still enforce the parties' agreement to arbitrate and allow the arbitrator to determine whether the contract as a whole is invalid. *Rent-A-Ctr.,* 561 U.S. at 70. Only where a party challenges the validity of "the precise agreement to arbitrate at issue" will a court be required to resolve the party's challenge before ordering compliance with the arbitration agreement. *Id.* at 71.

  **B.**   **Analysis**

    **1.**   **The Validity of the Arbitration Agreement**

Plaintiff's first claim is that the arbitration provisions of the DRA are null void. As discussed below, because Plaintiff's challenge does not attack the specific arbitration provision at issue, the Court concludes that Plaintiff's first claim must be resolved by the arbitrator.

Plaintiff argues that the "Dispute Resolution Agreement clause" in the Application is null and void because Defendants failed to comply with the opening statement in the Application, (*see*

7

Dkt. No. 1 at ¶¶ 21-22), which states that the Company "is an equal opportunity employer and does not unlawfully discriminate in employment," (Dkt. No. 9-9 at 1). However, because Plaintiff's argument attacks the validity of the entire Application (including its arbitration provisions), Plaintiff's first claim must be resolved by arbitration pursuant to the terms of the DRA in which the parties "agree[d] to arbitrate the issue of arbitrability of any claim," (*id.* at 5). *See Quilloin*, 673 F.3d at 228 (noting that "questions of arbitrability . . . [include] challenges to an arbitration agreement's validity").

In reaching this conclusion, the Court finds the case of *Buckeye Check Cashing, Inc.* to be instructive. In *Buckeye Check Cashing, Inc.*, the plaintiffs resisted arbitration on the basis that the contract which contained the arbitration clause was illegal, and thus void, because the contract allegedly violated several lending and consumer-protection laws. 546 U.S. at 442-43. In reversing the Florida Supreme Court, the United States Supreme Court held that because the plaintiffs challenged the agreement itself, but not specifically its arbitration provisions, the arbitrator—and not the Court—must determine the validity of the agreement. *Id.* at 446. In reaching its holding, the Supreme Court noted that "[t]he crux of [plaintiffs' challenge] is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge." *Id.* at 444. The Supreme Court went on to articulate that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. . . . [and] unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46.

Here, as in *Buckeye Check Cashing, Inc.*, Plaintiff's challenge goes to the validity of the Application itself, rather than the specific arbitration provision. In particular, Plaintiff's challenge is based on Defendants' alleged violation of the equal opportunity provision in the opening

8

statement of the Application. (*See* Dkt. No. 12 at 13-14). Plaintiff does not identify (and the Court cannot perceive) how violating this provision affects the arbitration agreement any differently than the rest of the Application. This is especially so given that the equal opportunity provision on which Plaintiff rests his argument is not located within the DRA. Like the plaintiffs in *Buckeye Check Cashing, Inc.*, Plaintiff's claim, if true, would invalidate the entire Application (including the arbitration provisions within the DRA). 546 U.S. at 442-43; *see also New Jersey Bldg. Laborers Statewide Benefits Fund v. Am. Coring & Supply*, 341 F. App'x 816, 820 (3d Cir. 2009) (rejecting defendant's argument that the court rather than the arbitrator should have decided whether the expiration of the contract invalidated the agreement to arbitrate in part because "[no part of [defendant's] argument on this appeal attacks the arbitration clause itself. [Defendant] does not argue that the arbitration provision is invalid on its face or that anything in the language of that provision renders it inapplicable to [Defendant]."). Accordingly, Plaintiff's claim that Defendants' alleged violation of the equal opportunity provision voided the DRA is subject to arbitration.[3]

---

[3] The reasoning underlying this conclusion is not inconsistent with the Court's Order in the Prior Proceedings, in which the Court made the determination that the parties had entered into a valid arbitration agreement. *Soto*, 2010 WL 2384582, at *4-5. In the Prior Proceedings, Plaintiff argued that, because he did not sign the DRA, he was not bound by its arbitration provisions. *Id.* at 2. As noted by the Supreme Court, "the issue of the contract's validity is different from the issue [of] whether any agreement between the . . . [parties] was ever concluded." *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1; *see also Rent-A-Ctr.*, 561 U.S. at 70 n.2. In the latter instance, the Court determines the question of the existence of an agreement. Thus, unlike the instant case, Plaintiff's challenge in the Prior Proceeding that he never entered into an agreement to arbitrate because he did not sign the DRA was properly resolved by the Court. *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000) (holding that where a party disputed the very existence of an agreement on the grounds that the signor lacked authority to commit the alleged principal, the court must determine whether an agreement was ever formed before ordering arbitration).

### 2. The Arbitrability of Plaintiff's Second and Third Claims

Having determined that Plaintiff's first claim regarding the validity of the arbitration agreement is subject to arbitration, the Court next examines Plaintiff's remaining two claims and finds that they are also subject to arbitration. Plaintiff's second claim seeks a declaratory judgment that the findings of the EEOC and DOL regarding Defendants' discriminatory conduct are res judicata. (*See* Dkt. No. 1 at ¶ 28). Plaintiff's third claim seeks a declaratory judgment that Plaintiff may pursue an action for general, compensatory, and punitive damages in court by way of jury trial based on the findings from DOL and EEOC. (*See id.*). Defendants argue that the DRA requires that both of these claims be determined by arbitration. (Dkt. No. 9 at 17-18).

To determine whether Plaintiff's second and third claims must be decided by arbitration, the Court would normally determine whether these claims fall within the scope of the DRA, *see CardioNet, Inc.*, 751 F.3d at 172, because questions of arbitrability are presumptively for judicial determination, *Quilloin*, 673 F.3d at 228. However, the Court notes that the plain language of the DRA contains "'clea[r] and unmistakabl[e]' evidence" that Plaintiff and Defendants intended to arbitrate issues of arbitrability. *Quilloin*, 673 F.3d at 228 (quoting *First Options of Chi., Inc.,* 514 U.S. at 944). Specifically, the DRA states: "The parties also agree to arbitrate the issue of arbitrability of any claim. The arbitrator shall decide all issues of arbitrability including, but not limited to, any defenses to arbitration based on waiver, delay, or like defense." (Dkt. No. 9-9 at 5). This language leaves no question as to the parties' intent to arbitrate the issue of arbitrability. *Cf. Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that there was "clear and unmistakable evidence" of the parties intent to arbitrate the issue of arbitrability based on the following provision: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration

agreement"); *GGIS Ins. Servs., Inc. v. Lincoln Gen. Ins. Co.*, 773 F. Supp. 2d 490, 505 (M.D. Pa. 2011) (finding that the parties agreed to arbitrate the issue of arbitrability based on the following provision: "The board of arbitration will have complete jurisdiction over the entire matter in dispute, including any question as to its arbitrability.").

Because the parties here have clearly and unmistakably agreed to "arbitrate the issue of arbitrability" (Dkt. No. 9-9 at 5), the issue of whether Plaintiff's particular claims fall within the scope of the DRA is properly decided by the arbitrator. *See Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007) (noting that "the question of 'whether the parties have submitted a particular dispute to arbitration, *i.e.* the "*question of arbitrability*," is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise'" (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002))) (emphasis in original); *Contec Corp.*, 398 F.3d at 211 (holding that a party's ability to enforce an arbitration agreement "is a matter of the [a]greement's continued existence, validity and scope, and is therefore subject to arbitration under the terms of the arbitration clause" in which the parties agreed to arbitrate the issue of arbitrability). Accordingly, Plaintiff's second and third claims will be referred to arbitration for a determination of arbitrability and for any proceedings consistent with that determination.

### III. CONCLUSION

Having determined that Plaintiff's claims are subject to arbitration, the Court will stay any further proceedings in this Court and refer to arbitration the determination of the arbitrability of Plaintiff's claims and any further proceedings consistent with that determination.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 31, 2016                         _____/s/_____
                                                            WILMA A. LEWIS
                                                            Chief Judge